IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WESTLEY RETZLER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES MCANDREW, et al., | : | No. 08-2764 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                          September 29, 2010

Pro se Plaintiff Westley Retlzer claims that James McAndrew, the Bristol Township Chief of Police, violated his constitutional rights when McAndrew took Retzler's audio recorder and manhandled Retzler following a Bristol Township Council meeting. Retzler also claims that Bristol Township Police Department Community Service Officer David Woodard violated his constitutional rights when Woodard interjected himself into the altercation between Chief McAndrew and Retzler. Additionally, he alleges that in a separate incident, Woodard pointed a gun at Retzler while they were at a municipal building. Defendants filed a motion for summary judgment to which Retzler has responded. The Court grants the motion.

**I.     BACKGROUND**

Westley Retzler resides in Bristol Township, Pennsylvania. (Defs.' Mot. for Summ. J. Ex. G [Retzler Dep.] at 10.) He has regularly attended and participated in Bristol Township Council meetings since 1998. (*Id*. at 16.)

On June 16, 2006, Retzler attended a Bristol Township Council meeting. He walked into the auditorium where the meeting was being held, picked up a meeting agenda and took a seat in the

back of the room. (*Id*. at 36.) Retzler elected to speak during a public comment period toward the end of the meeting. (*Id*. at 37-39.)

When it was Retzler's turn to speak, he got up to the podium and directed his comments to Chief McAndrew. (*Id*. at 44-45.) Retzler said, "there was smoke coming off the top of your head and you could see a smoke cloud all the way here from here to Belleview Avenue and McCarthy Street." (*Id*. at 45-46.) These comments were directed to Chief McAndrew and revealed the intersection where the Chief lived. (*Id*. at 45-46.) Retzler addressed the audience for about three minutes. (*Id*. at 47.) Chief McAndrew, who was sitting at a table reserved for the heads of various local departments, fired back at Retzler that he should not be permitted to disclose his address at the meeting. (*Id*. at 49-52.)

After the meeting adjourned, Retzler walked down the hall to the men's room. (*Id*. at 54.) Upon leaving the men's room, he headed back towards the meeting room where Chief McAndrew was standing talking to somebody. (*Id*. at 55-56.) Chief McAndrew spotted Retzler, stopped his conversation, scurried into the hallway, and slammed the door shut. (*Id*. at 56.) The Chief then said to Retzler, "I got you now. I got you now, you little fucking psycho bastard. I set you up." (*Id*. at 57; *see also* Defs.' Mot. for Summ. J. Ex. J [McAndrew Dep.] at 23.) Retzler told the Chief that he could record their conversation. (Retzler Dep. at 62.) Chief McAndrew then grabbed Retzler's right arm and shoved him against the wall and took Retzler's audio recorder from his pocket. (*Id*. at 58-59.) Chief McAndrew smacked Retzler on the head with the audio recorder. (*Id*. at 104.) After Chief McAndrew removed the recorder and released his grip of Retzler's arm, Officer Woodard entered the hallway. (*Id*. at 68-70.)

The Chief instructed Woodard, who was armed, to place Retzler against the wall and pat him

2

down. (*Id*. at 76, 78-79.) Woodard patted down Retzler and then Retzler and Woodard walked back into the meeting room. (*Id*. at 79-81.) Upon returning to the meeting room, Retzler saw Chief McAndrew turn on the recorder and play it back. (*Id*. at 82.) The Chief then repeated that he "got this fucking little psycho bastard now." (*Id*. at 83.) Retzler asked for his recorder back but the Chief refused because he was going to have a technician examine it. (*Id*. at 86.) Retzler consented, but insisted on a property receipt, which he was given. (*Id*. at 86-87, 90-91.) After he received his property receipt, Retzler returned to his vehicle and departed, after the Chief "told [him] to get the hell out of here." (*Id*. at 91, 96.)

Upon returning home that evening, Retzler called the State Police and went to the hospital with Laura Warden, the woman with whom he lived. (*Id*. at 98-99.) At the hospital, x-rays were taken and Retzler was given pills. (*Id*. at 101-02.) He later followed up with a doctor. (*Id*. at 108.) Additionally, the State Police interviewed Retzler and Bucks County Detectives took pictures of Retzler's arm and head while he was at the hospital. (*Id*. at 102-03.)

On June 27, 2006, Magisterial District Judge Joanne Kline signed a warrant allowing police to listen to the contents of Retlzer's audio recorder. (Defs.' Mot. for Summ. J. Ex. E [Search Warrant].) According to the affidavit of probable cause, Chief McAndrew confronted Retzler in the hallway to express his anger that Retzler had revealed the Chief's address. Retzler pulled the recorder from his pocket and told Chief McAndrew to be careful about what he said because he was being recorded. (*Id*.) Chief McAndrew seized the recorder because he believed Retzler committed a crime by recording their private conversation. (*Id*.) Retzler's audio recorder was eventually returned to him and no criminal charges were filed against McAndrew or Retzler as a result of this incident. (Retzler Dep. at 122-23; Defs.' Mot. for Summ. J. Ex. D [Bucks County Detectives

Investigation Report].)

During his deposition, Retzler also referred to an incident in June of 2007 in which Woodard, while in his car, pointed a gun at Retzler's head on the grounds of a municipal building. (Retzler Dep. at 128-29.) The only information adduced during discovery about this incident was that Woodard never pointed a gun at Plaintiff. (Defs.' Mot. for Summ. J. Ex. I [Woodard Dep.] at 23, 48.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

Although Plaintiff is acting pro se, he is not relieved of his obligation to present evidence that

a genuine issue of material fact exists for trial. *See Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir.1993).

## III. DISCUSSION

### A. Claims Against Chief McAndrew

Plaintiff's Complaint asserts a cause of action under 42 U.S.C. § 1983. Section 1983 provides redress for those subjected to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To succeed on a § 1983 claim, the plaintiff must establish that the defendants, acting under color of state law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained-of injury. *See, e.g., Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). As the Court understands Retzler's claims, he asserts that Chief McAndrew violated his Fourth Amendment rights when he confiscated Retzler's audio recorder and used excessive force during their altercation.

#### 1. *Excessive Force*

Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard asks whether an officer's actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*,

490 U.S. at 397 (internal quotations marks omitted); *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004). "The reasonableness of a particular use of force must judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Not every push or shove from a police officer constitutes a constitutional violation, even if it later appears unnecessary. *Id*.

Although the reasonableness of the use of force is normally to be decided by a jury, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec*, 361 F.3d at 777. The following factors are relevant to the Court's inquiry: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; (4) the duration of the officer's action; (5) whether an action takes place in the context of effecting an arrest; (6) the possibility that the subject may be armed; (7) the number of persons with whom the police officers must contend at one time; and (8) whether the force applied was of such an extent as to lead to injury. *See McCracken v. Freed*, 243 F. App'x 702, 709 (3d Cir. 2007) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

The ultimate lack of an injury is not sufficient to reject an excessive force claim; however, the alleged force use must rise above a de minimis level. *Foster v. David*, Civ. A. No. 04-4829, 2006 WL 2371976, at *7 (E.D. Pa. Aug. 11, 2006); *see Herrera v. City of New Brunswick*, Civ. A. No. 04-3002, 2008 WL 305275, at *5 (D.N.J. Feb. 1, 2008) ("The [Third Circuit] made it clear that the minor degree of plaintiff's injury, while relevant to the totality of the circumstances, could not, on its own, serve as a complete defense to an excessive force claim.") (citing *Smith v. Mensinger*,

293 F.3d 641, 649 (3d Cir. 2002)).

Viewing the facts in the light most favorable to Retzler, the Court holds as a matter of law that Chief McAndrew did not use excessive force. Without question, a physical altercation ensued between the two men. Chief McAndrew did not deny such a physical encounter either shortly after it occurred or at his deposition. (Pl.'s Resp. To Defs.' Mot. for Summ. J. [Bucks County Courier Times Article] ("McAndrew said he did grab Retzler's arm to restrain him. 'You bet your bippy, I did.'"); Bucks County Detectives Investigation Report ("Chief McAndrew stated that he grabbed Retzler's arm . . . .").) The interaction between Chief McAndrew and Retzler, however, lasted for only a brief period of time and did not result in any injury to Retzler. *See Benckini v. Hawk*, 654 F. Supp. 2d 310, 323 (E.D. Pa. 2009) (granting summary judgment to officer because the encounter lasted only minutes "and any force exerted against [plaintiff] was limited to a single shove that did not result in any injury"). Furthermore, at the time of their physical altercation, Chief McAndrew was the only officer involved with Retzler, an individual with whom the Bristol Police Department has had an inordinate number of encounters. (*See* McAndrew Dep. at 44 (estimating that police department responded to over 300 calls from Retzler since 1987).) Chief McAndrew's de minimis use of force does not rise to the level of a constitutional violation.

2.  *Unlawful Seizure*

The Court also believes that Retzler has attempted to put forward a Fourth Amendment claim for Chief McAndrew's seizure of Retzler's audio recorder. Chief McAndrew argues that he is protected by qualified immunity for his actions on the evening of the incident. The Court need not address the issue, however, because Retzler's argument suffers from a fatal flaw that warrants granting summary judgment on the seizure claim. According to Retzler's statement to the Bucks

7

County Detectives, Retzler demanded a property receipt if Chief McAndrew was going to take the digital recorder. (Bucks County Detectives Investigation Report.) This is consistent with his deposition testimony in which Retzler said that it was "fine" if Chief McAndrew took the recorder and "[y]ou want to keep my recorder, you can, but you're going to give me a property receipt for it." (Retzler Dep. at 86-87.) The evidence is uncontroverted that Woodard then got a property receipt, Chief McAndrew filled it out in front of Retzler, and provided a copy of it to Retzler. (*Id*. at 87, 90-91; Defs.' Mot. for Summ. J. Ex. C [Property Receipt].) Under the circumstances, Retzler consented to have Chief McAndrew take his recorder provided he gave Retzler a property receipt for the item. This consent obviates the need to have a warrant to search Retzler. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Vaghari*, 653 F. Supp. 2d 537, 543 (E.D. Pa. 2009) ("One exception to the warrant requirement, however, is a search or seizure conducted pursuant to voluntary consent."). The Court thus grants summary judgment on Retzler's Fourth Amendment seizure claim.

### B. Claims Against Officer Woodard

Officer Woodard is entitled to summary judgment in his favor. With respect to Woodard's actions on June 15, 2006, Retzler testified that Woodard, following Chief McAndrew's directions, placed Retzler against the wall, patted him down, and walked him back into the meeting room. According to Woodard—whose testimony on this point is uncontroverted—he heard a verbal altercation between Chief McAndrew and Plaintiff while securing the building as part of his job duties. (Woodard Dep. at 38-41; *see also* Bucks County Detectives Investigation Report.) He then proceeded into the hallway where he saw Chief McAndrew and Retzler. According to Retzler, Woodard played no role in taking Retzler's audio recorder or assaulting him. The Court finds, as

8

a matter of law, no basis for finding Woodard liable for his actions on June 15, 2006. As for the incident in which Woodard purportedly aimed a weapon at Retzler's head, Retzler has produced no evidence that this incident occurred. Instead, he relies on the allegations contained in his Complaint. Such bald assertions cannot defeat a summary judgment motion.

## IV. CONCLUSION

"A plague o' both your houses." WILLIAM SHAKESPEARE, ROMEO AND JULIET, act 3, sc. 1. Retzler's constant interactions with the Bristol Township Police Department and its officers has led to numerous federal lawsuits, which in turn have spurred myriad motions and contentious litigation. Retzler has filed twenty lawsuits in this District, none of which has raised a single viable federal claim. He is obviously a painful thorn in the side of the Bristol Township Police Department, sapping valuable resources from the community over petty disputes. The Court understands that civility suffers when police officers, who must protect and serve the entire community, are forced to respond to a multitude of complaints involving a single individual. And while the Court does not condone the actions of Chief McAndrew on June 15, 2006, which might have been an overreaction, they do not rise to the level of a constitutional violation. Therefore, the Court grants Defendants summary judgment. To the extent Retzler's Complaint can be read to contain a state law claim for battery, the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Hopefully, the parties will move forward and treat each other with respect and dignity. An Order consistent with this Memorandum will be docketed separately.